UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-439-KSF

LONNIE R. WILSON                                                                                     PLAINTIFF

v.                                          **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                                    DEFENDANT

\* \* \* \* \* \* \* \* \* \*

The claimant, Lonnie R. Wilson, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") based on disability. The Court, having reviewed the record, will reverse the Commissioner's decision and remand this case for further consideration.

**I.    OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

>  (1)    If the claimant is currently engaged in substantial gainful activity, he is not disabled.
>
>  (2)    If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found disabled.

1

> (3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> (4) If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.
>
> (5) Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc), he is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F. 3d 388, 391 (6th Cir. 1999).

A claimant who has been determined to suffer from a severe impairment proceeds to the third step of the process in which the ALJ must determine whether the medical evidence alone establishes the claimant's inability to engage in substantial gainful activity. At this stage, the claimant's impairment is matched against the specific medical disorders listed in Appendix 1 of the Regulations, 20 C.F.R. 404, Subpt. P, App. 1. An individual who can show that he suffers from a listed impairment or its medical equivalent, will be found disabled regardless of his age, education or work experience. *Gambill v. Bowen*, 823 F.2d 1009, 1011 (6th Cir. 1987).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II.   THE ADMINISTRATIVE DECISION

In this case, ALJ Ivar E. Avots conducted a hearing on May 6, 2003, and issued his opinion denying Wilson's application for SSI benefits on May 22, 2003. [TR 14-22] The Appeals Council denied Wilson's request for review on September 19, 2005. Wilson appealed the decision to the United States District Court for the Eastern District of Kentucky. The District Court reversed the administrative decision and remanded the claim on October 31, 2006, for further consideration pursuant to Sentence Four of 42 U.S.C. § 405(g). [TR 330-340] On March 7, 2007, the Appeals Council remanded the case to an Administrative Law Judge for further proceedings consistent with

the District Court's opinion. [TR 341-343]   The District Court noted Wilson's history of treatment for low back pain and objective findings of tenderness and spasm, positive straight leg raising on some occasions, right leg weakness and abnormal lower extremity sensation.  The District Court also noted that evidence from an MRI performed in February 2003, documenting multiple herniated discs, degenerative disc disease, degenerative facet disease and mild bilateral neuroforaminal narrowing comes close to, if not satisfies, the Commissioner's Listing of Impairments ("Listing") for Disorders of the Spine.  Additionally, the District Court noted that the valid full-scale IQ score of 65 obtained by Dr. Gary Maryman required consideration of Listing 12.05C because Wilson's "mental status comes close to meeting the central portion of [Listing 12.05C], and it is only some commentary in the one mental health examiner's report concerning an analysis of [Wilson's] work history which implies that Wilson's limitations did not necessarily extend to his developmental period so as to fully satisfy that Listing." [TR 340].

On August 17, 2007, Wilson appeared for a second administrative hearing before ALJ Frank Letchworth.  On September 4, 2007, ALJ Letchworth issued an unfavorable decision. [TR 301-316] At the time of ALJ Letchworth's decision, Wilson was 41-years-old.  Wilson claims disability due to seizure disorder, low back pain with lumbar disc herniation, chronic cholecytitus, hearing deficits, chronic obstructive pulmonary disease, migraines, gastroesophageal reflux, anxiety, depression and mild mental retardation.  The medical evidence before ALJ Letchworth consisted of several treating physician records, including the records of Dr. Cheung Shin and Dr. Farooq Ghory, consultative evaluation reports by two agency physicians, Dr. Jules Barefoot from 2001 and Dr. Bradley Davis from 2007, and psychological consultative evaluation reports by  Gary Maryman, Psy.D. and Reba Moore, M.A. Psy.S., licensed psychological practitioner.  Ms. Moore's evaluation was performed

4

after the District Court's remand. The record also contains reports by two agency reviewers, Edward M. Stodola, Ph.D. and Jay E. Athy, Ph.D., who reviewed Dr. Maryman's report.

ALJ Letchworth began his analysis at step one by determining that Wilson has not engaged in any substantial gainful activity since his alleged onset date of November 1, 2000. At step two, ALJ Letchworth found that Wilson suffers from the following impairments determined to be severe as combined: degenerative conditions of the lumbar spine with herniated nucleus pulposus, a history of seizures, a history of alcohol abuse, borderline intellectual functioning and illiteracy [TR 306-08]; however, the ALJ determined that these impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [TR 308-10] ALJ Letchworth found that Wilson maintained the residual functional capacity ("RFC") to perform a range of light work limited by his inability to crawl, climb ladders, ropes or scaffolds or work at unprotected heights, with hazardous machinery or with exposure to extreme temperatures or excess humidity. [TR 310-14] He requires a 30-minute alternating sit/stand option and he could only occasionally stoop, bend, crouch or climb ladders, ropes or scaffolds. He can perform one to two-step instructions, but is precluded from jobs requiring reading as an essential job element. [TR 310-14] At step four, ALJ Letchworth determined that Wilson is unable to perform any past relevant work as a forklift operator, chainsaw operator and security guard. [TR 310-14] Proceeding to the fifth and final step, taking into consideration Wilson's age, education, work experience and RFC and relying on the testimony of the Vocational Expert ("VE"), ALJ Letchworth determined that there are jobs that exist in significant numbers in the national economy that the claimant could perform. [TR 315] As a result, ALJ Letchworth determined that Wilson is not disabled.

ALJ Letchworth's decision that Wilson is not disabled became the final decision of the

Commissioner when the Appeals Counsel subsequently denied his request for review. This case is now ripe for review under 42 U.S.C. § 405(g), 1383(c)(3).

**III. ANALYSIS**

On appeal, Wilson argues that ALJ Letchworth failed to properly consider the applicable Sections of the Listings (both the Listing for Disorders of the Spine and Listing 12.05) in determining whether the finding of disability could be reached at the third step in the sequential evaluation process.

ALJ Letchworth rejected applicability of the Listing 1.04 for Disorders of the Spine.[1] Wilson argues that ALJ Letchworth's finding was based on his determination that the record contained no evidence of motor loss but this characterization is oversimplified. ALJ Letchworth noted that while the MRI showed evidence of a herniated pulposus, thereby meeting the initial requirements of Listing 1.04, there were evidentiary deficiencies in the remaining criteria to support

---

[1] Listing 1.04 in 20 C.F.R. Pt. 400, Subpart P, states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

any of subsections A, B or C of the Listing. Specifically, he found that despite the objective findings of degenerative conditions with back pain and spasm that waxes and wanes, the documentary evidence does not meet the requirements in Part A of the Listing. In support of this conclusion, he cited that there is no evidence of motor loss in the record and only one finding of decreased sensation to palpitation since February 2003. Further, he noted that the results from straight leg raise tests were mixed. While there were some positive test results, the results showed negative straight leg raise since December 2005. Next, he found that Wilson does not meet Part B of Listing 1.04 because the record contains no spinal arachnoiditis. Finally, he found that Wilson does not meet Part C of Listing 1.04 because the record shows no lumbar spinal stenosis. There is substantial evidence to support ALJ Letchworth's conclusion that Wilson did not meet any of the subsections of Listing 1.04 and the court will not reverse or grant remand on this basis.

ALJ Letchworth also found Listing 12.05C inapplicable. To establish disability due to the presence of a mental impairment on the basis of medical evidence alone, a claimant must satisfy the requirements of one of the nine listings for mental impairment contained in Appendix 1. Most of these listings impose two requirements: first, that the claimant possesses certain particular signs or symptoms; and second, that the symptoms result in a specified degree of functional limitation. The symptoms are generally found in Paragraph A of each listing and are referred to as "A Criteria." The "functional limitations associated mental disorders which are incompatible with ability to work" are generally contained in Paragraph B and are the same for all relevant disorders and are often referred to the "B Criteria." The B Criteria require, depending on the particular listing, that either two or three of the following restrictions exist in order for disability to be found at this state: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3)

deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (work or elsewhere); or (4) repeated episodes of deterioration or decompensation in work or work life settings which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms.

The listing for mental retardation contained in Appendix 1 at Section 12.05 and set forth in the margin differs from nearly all the others in that it does not require satisfaction of the B Criteria in all cases. Listing 12.05C allows for a finding where test scores fall between 60 to 70 on the Wechsler Adult Intelligence Scale ("WAIS") when the claimant demonstrates presence of a physical or other mental impairment imposing additional and significant work-related limitations of function. The claimant must also satisfy the "diagnostic description" of mental retardation in the introductory paragraph of Listing 12.05, which states that "mental retardation refers to significantly subaverage general intellectual functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

With regard to Listing 12.05C, ALJ Letchworth found that the criteria were not met because Wilson does not have a valid verbal, performance or full-scale IQ within the applicable range and a physical or other mental impairment imposing and additional and significant work-related limitation of function.[2] The ALJ acknowledged that there is evidence of a 2001 WAIS score of 65

---

[2] ALJ Letchworth also reviewed the B Criteria (Listing 12.05D) and found that Wilson did not meet two of those criteria. He found that Wilson had mild to moderate restrictions in daily living, mild difficulties in social functioning and moderate difficulties with concentration, persistence or pace and had no episodes of decompensation. Since the ALJ found that Wilson did not have two "marked" limitations or one "marked" limitation and "repeated episodes of decompensation, he found that the B Criteria were not satisfied. Wilson has not pointed to evidence in the record to contradict this finding, and this court finds that the ALJ's determination

and verbal IQ of 73 by Dr. Maryman and 2007 scores of 60 and 63 by Ms. Moore. Dr. Maryman diagnosed mild to lower range borderline intellectual functioning and Ms. Moore diagnosed mild mental retardation. The ALJ accorded little weight to Ms. Moore's diagnosis of mild mental retardation because he found it was inconsistent with Wilson's work history of some semi-skilled work and because he found no evidence of mental retardation during the developmental period prior to age 22. The ALJ recounted Wilson's educational history and found that, while it noted some problems, it showed no deficits in adaptive function in the developmental period. He also noted that any recent diagnosis of mental impairment is complicated by "heavy" alcohol abuse for ten years.

This court finds that the record does not contain substantial evidences to support the ALJ's decision that Wilson fails to meet Listing 12.05C. First, the ALJ erred in finding that the record shows no evidence of mental retardation during the developmental period. Wilson had valid IQ scores in the 60s. Even though the tests that resulted in these scores were administered after Wilson reached age 22, absent evidence of sudden trauma that can cause retardation, the courts follow a rebuttable presumption that a claimant's IQ remains fairly constant throughout his life. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001)). A Sixth Circuit panel endorsed this reasoning in *McPeek v. Secretary*, 1994 WL 56929, 19 F.3d 19 (6th Cir. Feb. 24, 1994) (unreported table decision). In other words, absent evidence that Wilson's IQ may have changed after age 22, the fact that Wilson had an IQ score in the 60s after age 22 leads to the conclusion that his IQ before age 22 was in the 60s as well. The ALJ commented that Wilson's alcohol use "complicated" any diagnosis of mental impairment but there is no medical evidence in the record to support this conclusion.

---

with regard to Listing 12.05D was supported by substantial evidence.

Second, the ALJ erred by relying on reports of Dr. Maryman's and the reviewers as the sole support for determining that Wilson did not meet Listing 12.05C. The district court remanded the case for consideration of 12.05C after reviewing the record containing Dr. Maryman's report and the reports of the two consultative reviewers, Dr. Stodola and Dr. Athy. The only new evidence in the record concerning Wilson's intellectual functioning is Ms. Moore's report which diagnosed Wilson with mild mental retardation. It does not follow that the ALJ can now consider and rely only on those initial reports as the sole basis for his decision when those reports did not previously constitute substantial evidence that Wilson did not meet the Listing.

There is nothing in Dr. Maryman's report to support a conclusion that Wilson's IQ score does not accurately reflect his intellectual capacity and the ALJ did not provide sufficient justification for rejecting Ms. Moore's findings. Dr. Maryman stated that the "scores [of 65 and 73] are believed to be reasonably representative of [Wilson's] actual capabilities." [TR 156]. Additionally, in his report, Dr. Maryman observed that Wilson was reasonably clean in appearance and noted that Wilson helps with babysitting chores, goes with his wife to the grocery, takes out the garbage and visits with his father. None of these observations indicates that Wilson is not mildly mentally retarded. The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed. Text Revision) (DSM-IV-TR) states that:

> Mild Mental Retardation is roughly equivalent to what used to be referred to as the educational category of "educable." This group constitutes the largest segment (about 85%) of those with the disorder. As a group, people with this level of Mental Retardation typically develop social and communication skills during the preschool years (ages 0-5 years), have minimal impairment in sensorimotor areas, and often are not distinguishable from children without Mental Retardation until a later age. By their late teens, they can acquire academic skills up to approximately the sixth-grade level. During their adult years, they usually achieve social and vocational skills adequate for men of minimum self-support, but may need supervision, guidance, and

assistance, especially when under unusual social or economic stress. With appropriate support, individuals with Mild Mental Retardation can usually live successfully in the community, either independently or in supervised settings. DSM-IV-TR at 43.

There is nothing in record regarding Wilson's biography that precludes him from fitting within the profile of a mildly retarded individual as set forth in the DSM-IV-TR. Further, many of Dr. Maryman's comments support a finding that Wilson is mildly mentally retarded. For example, Dr. Maryman noted that Wilson had a fairly limited fund of information and is illiterate. Dr. Maryman's observations that Wilson "should be able to sustain his focus and concentration sufficiently that would enable him to complete and carry out a work assignment within a reasonable time frame" and that he should be able to interact with supervisors, co-workers and the general public are not inconsistent with the DSM-IV-TR profile and the ALJ cites no empirical evidence to support such a conclusion.

There is also nothing about Wilson's work history to indicate that he does not meet the Listing. Dr. Maryman's only comment regarding Wilson's past work was that he "believed that with [Wilson's] work record, he would not be considered appropriate to diagnose with mental retardation." [TR 158]. Dr. Maryman, however, offers no explanation or support for this conclusion. The VE's testimony does not support the ALJ's conclusion that Wilson's work history precludes him from meeting the Listing. The VE classified Wilson's past work as being on the lower end of semiskilled and unskilled. The only position that she classified as being semiskilled was "security guard" which Wilson did for only four months. The DSM-IV-TR states that even persons with Moderate Mental Retardation may be able to perform unskilled or semiskilled work under supervision. DSM-IV-TR at 43. If a moderately mentally retarded individual can perform

11

semiskilled work, at least under some circumstances, a person performing semiskilled work is not inconsistent with mild mental retardation.

Further, the consultative reviewers' reports do not support a finding that Wilson does not meet the Listing. Dr. Athy did not evaluate whether Listing 12.05C applied and Dr. Stodola commented that if the physical impairment is severe, a further assessment was necessary to determine if Listing 12.05C applied. Although, both Dr. Athy and Dr. Stodola diagnosed borderline intellectual functioning, Dr. Stodola noted Wilson had an IQ within the mentally retarded range. Neither reviewer offered significant commentary regarding Wilson's intellectual functioning, his work history nor biography.

While there is not substantial evidence to support rejection of Wilson's claim, there is also insufficient evidence for this court to find that Wilson meets Listing 12.05C. The Secretary must determine whether Wilson's mental and physical impairments "impose additional and significant work-related limitations of function" pursuant to 12.05C. Wilson certainly has physical impairments related to his spine, but the Secretary must make the determination whether those impairments result in significant work-related limitations. The court will remand this case for further review of this issue. On remand, the Secretary should also address the issue of whether Wilson's mental impairment was "manifested during [his] developmental period" or rather is a partial consequence of any alcohol use after the age of 22 which would preclude a finding that he meets Listing 12.05C.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** that the motion of the claimant for summary judgment [DE 18] is **GRANTED**. The decision of the Commissioner is **REVERSED** and the case is **REMANDED** to the Commissioner

for disposition in accordance with this Opinion & Order.

**IT IS FURTHER ORDERED** that the motion of the Commissioner for summary judgment [DE 19] is **DENIED**.

**IT IS FURTHER ORDERED** that the motion of the claimant to file excess pages [DE 17] is **GRANTED**.

This 9th day of January, 2009.

Signed By:
*Karl S. Forester*  KSF
**United States Senior Judge**